UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL SCALI, on
behalf of himself and all
others similarly situated,

    Plaintiffs,

v.                                                                          Case No. 8:14-cv-01919-VMC-TBM

THINKDIRECT MARKETING
GROUP, INC., a/k/a or formerly
known as AGORA MARKETING
SOLUTIONS, INC. a/k/a or formerly
known as SPECIAL DATA PROCESSING
CORPORATION a/k/a or formerly
known as NATIONAL MAGAZINE
EXCHANGE, BLACKSTREET
CAPITAL MANAGEMENT, LLC,
THOMAS H. RIPLEY, Individually,
DENNIS CAHILL, Individually,
PAT DALL, Individually, and
DAVE MACEY, Individually,

    Defendants.
_____/

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), Plaintiffs, MICHAEL SCALI (hereinafter "Scali"), on behalf of himself and all others similarly situated, and Defendants, THINKDIRECT MARKETING GROUP, INC. a/k/a or f/k/a AGORA MARKETING SOLUTIONS, INC. a/k/a or f/k/a SPECIAL DATA PROCESSING CORPORATION a/k/a or f/k/a NATIONAL MAGAZINE EXCHANGE, THOMAS H. RIPLEY, Individually, DENNIS CAHILL, Individually, PAT DALL, Individually, and DAVE MACEY, Individually (hereinafter "Thinkdirect"), (hereinafter "the Parties" refers to "Scali" and "Thinkdirect" collectively) hereby jointly move the Court to approve the settlement of Scali's FLSA claims, and in support thereof state as follows:

1. On or about June 20, 2014, Scali filed (on behalf of himself and all others similarly situated) a Collective Action Complaint and Demand for Jury Trial in Florida state court, in the Sixth Judicial Circuit, in and for Pinellas County, alleging unpaid overtime wages under the Fair Labor Standards Act ("FLSA") while employed in telesales positions as Office Agents for Thinkdirect. Subsequently, Thinkdirect removed the action to this Court. *(Dkt. 1)*

2. Certain individuals – Brian Beasley, Debra McCall, Ellen Mascia, Joan Bowman, Maureen Jones, Patti Thompson, Sandra Summers-Barnes, Star Coulter, and Teresa Sousa – have filed opt-in notices in this litigation (hereinafter "Opt-ins"). However, Scali has not moved for certification, conditional or final, of a collective class, in this litigation.

3. The parties had a bona fide dispute over the compensability of certain batches of unpaid time. CISCO time records tracked each second of Scali's time during his employment with Thinkdirect.

4. Over the course of the litigation, Counsel for the parties worked diligently and engaged in a variety of efforts and discussions to narrow the issues and streamline the discovery in the above-styled cause of action as well as in the related state cases of *Daniel Hannafin et al v. ThinkDirect Marketing Group, Inc. et al,* Pinellas County Circuit Court Case No. 12-015216-CI-20; and *Ellen Mascia et al v. ThinkDirect Marketing Group, Inc. et al,* Pinellas County Circuit Court Case No. 12-015215-CI-13; and the related federal court case of *Elizabeth Heidbrink and L. Roxana Marion et al v. ThinkDirect Marketing Group, Inc. et al,* Middle District Court Case No. 8:14-cv-01232-JSM-AEP. The Opt-ins are plaintiffs in one or more of the related state cases.

5. These efforts included, but were not limited to, the following: 1) exchange of discovery information and taking of depositions; and 2) global settlement discussions of all claims in all four (4) cases, including settlement conferences and mediations. Additionally, Counsel for the parties continually discussed the most effective and efficient manner in which to

1) conduct discovery and litigate all four (4) cases; 2) handle the batches of disputed and undisputed unpaid time; and 3) conduct trials regarding all four (4) cases – on issues of both liability as well as damages for each of the 75 claimants.

6. During this process, the parties examined and analyzed a tremendous amount of data produced by Counsel for Thinkdirect, consisting of thousands of records, including, but not limited to, the following: 1) Weekly payroll and time records for each claimant's entire employment tenure with Thinkdirect; and 2) CISCO time records, which detailed each and every second of time for each claimant's entire employment tenure with Thinkdirect, tracking "ready" status and other categories of time.

7. Thereafter, on September 18, 2015, in the case styled *Elizabeth Heidbrink and L. Roxana Marion et al v. ThinkDirect Marketing Group, Inc. et al,* Middle District Court Case No. 8:14-cv-01232-JSM-AEP (hereinafter "*Heidbrink/Marion* action") a companion case to the instant action (the only difference being that the *Heidbrink/Marion* action involves overtime claims on behalf of Thinkdirect *office* agents while the instant case involves overtime claims on behalf of Thinkdirect *home* agents), Thinkdirect filed a Motion for Summary Judgment requesting that this Court rule as a matter of law that these disputed batches of unpaid time were non-compensable, which Plaintiffs opposed. *(Heidbrink/Marion Dkt. 71, 87)*

8. The instant case was stayed pending this Court's ruling on the summary judgment motion in the *Heidbrink/Marion* action.

9. On November 17, 2015, this Court entered an Order granting in part and denying in part Thinkdirect's Motion for Summary Judgment in the *Heidbrink/Marion* action. This Court denied Thinkdirect's Motion for Summary Judgment regarding the non-compensability of the disputed batches of unpaid time, holding that there were numerous questions for the trier of fact. This Court dismissed individual defendants, Thomas H. Ripley, Dennis Cahill, and Dave Macey, in the *Heidbrink*/*Marion* action, which was unopposed by Plaintiffs in said action.

10. Additionally, as part of said Order in the *Heidbrink/Marion* action, this Court ruled that the opt-in plaintiffs were dismissed from the case without prejudice. *(Heidbrink/Marion Dkt. 94)* On December 17, 2015, Plaintiffs filed an appeal to the Eleventh Circuit Court of Appeals regarding that portion of the ruling. *(Heidbrnk/Marion Dkt. 110)* Currently that appeal has been stayed pending the finalization of the subject settlement.

11. The *Heidbrink/Marion* action was scheduled for trial on January 11, 2016. *(Heidbrink/Marion Dkt. 123)*

12. The instant action was scheduled for trial during the April 2016 trial term. *(Dkt. 47)*

13. The parties engaged in renewed settlement negotiations shortly after this Court's ruling on Thinkdirect's Motion for Summary Judgment in the *Heidbrink/Marion* action and were able to achieve a conceptual settlement, which encompassed the subject action along with the state court cases of *Daniel Hannafin et al v. ThinkDirect Marketing Group, Inc. et al,* Pinellas County Circuit Court Case No. 12-015216-CI-20; *Ellen Mascia et al v. ThinkDirect Marketing Group, Inc. et al,* Pinellas County Circuit Court Case No. 12-015215-CI-13; *Mathew Anemanna, et al. v. ThinkDirect Marketing Group, Inc. et al.,* Pinellas County Circuit Court Case No. 15-008078; and *Ann Fisher, et al. v. ThinkDirect Marketing Group, Inc. et al.,* Pinellas County Circuit Court Case No. 15-007953; and the federal court *Heidbrink/Marion* action.

14. On January 8, 2016, the parties filed a Joint Notice of Settlement with this Court in the *Heidbrink/Marion* action. *(Heidbrink/Marion Dkt. 126)*

15. On February 9, 2016, given the summary judgment ruling and settlement notice in the *Heidbrink/Marion* action, this Court entered an Order reactivating the subject action, cancelling the March 9, 2016 pre-trial conference and the April 2016 jury trial, and directing that the parties confer and file an Amended Case Management Report. *(Dkt. 62)*

16. Thereafter, the parties requested and were granted several extensions of the stay order in the subject action, while Plaintiff's counsel discussed the conceptual settlement with 75 clients, including the Opt-ins, and obtained their consent thereto.

17. Plaintiff's counsel has recently obtained the formal consent of Scali and others not named herein, including the Opt-ins, who were part of the global settlement, encompassed by the actions referred to in paragraph no. 13 above. Resolution of the Opt-ins referred to in paragraph no. 2 above will be addressed in the global settlement agreement, which includes resolution of the state court actions.

18. The proposed Settlement Agreement provides for a gross settlement in the amount of $1,995.96 for Scali, with attorney's fees and costs to Plaintiff's counsel, Florin Roebig, P.A., in the amount of $1,078.23, and a net payment to Scali in the amount of $917.73. *A copy of the Settlement Agreement is attached hereto as Exhibit "A."* The parties have agreed to the terms of the Settlement Agreement and shall file a fully executed copy of same early next week.

19. In their proposed Settlement Agreement, which is contingent upon this Court's approval, the Parties have agreed that the gross settlement referenced in paragraph no. 18 above will be provided to Florin Roebig, PA, within fifteen (15) business days after four conditions are met: (1) Plaintiff executes the Settlement Agreement and returns an executed copy to Thinkdirect's counsel Kevin E. Hyde of the law firm of Foley & Lardner LLP; (2) this Court issues an Order approving the terms of this Agreement; (3) this action is dismissed with prejudice; and (4) the Opt-ins are dismissed with prejudice.

20. The settlement payment represents the straight time and overtime wages allegedly due to Scali based on a good faith belief by Thinkdirect from the information available through Thinkdirect's CISCO records to be the amount of unpaid straight time and

overtime wages for batches of unpaid time during Scali's employment with Thinkdirect during the relevant period, along with his attorneys' fees and costs.[1]

21.   Scali has confirmed that the amount of the settlement proceeds, including specifically his net payment amount, fairly and accurately represent the straight time wages and overtime compensation amount he believes would be due to him in accordance with the FLSA based on the good faith representations by Thinkdirect through the CISCO records.  Thinkdirect expressly denies violating the FLSA, but nevertheless views the payment of the settlement proceeds as an amount that it is willing to pay in order to forego incurring further litigation expenses.

**WHEREFORE**, the Parties respectfully move this Honorable Court to grant this Joint Motion for Approval of Settlement Agreement and to dismiss the case, including the claims of the Opt-ins, with prejudice thereafter.

## MEMORANDUM OF LAW

As a general rule, the FLSA's provisions are "mandatory," meaning that they generally are not subject to negotiation or bargaining between employer and employee. *See Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1352 (1982), *citing Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945). However, there are two ways by which FLSA claims may be settled, compromised or released by an employee. *Lynn's Food Stores,* 679 F.2d at 1352-53.  The first, which has no application in the instant case, permits resolution of claims under the supervision of the United States Department of Labor. *Id.*  The second, which is relied on here, permits resolution in the context of a private lawsuit brought by an employee against an employer under section 216(b) of the FLSA, an employee may settle and release FLSA claims against the employer if the Parties present the district court with a proposal settlement and the District Court enters a stipulated judgment approving the fairness of the settlement. *Id.; see also*

---

[1] Scali's straight time claims were brought in one of the related cases identified in paragraph 10 which alleges claims for unpaid wages under Florida state law.

*Sculte, Inc. v. Gandi*, 328 U.S. 108, 66 S. Ct. 925, 928, n. 8, 90 L.Ed 1114 (1946); *Farrad v. Southeastern Shipbuilding Corp.,* 163 F.2d 960, 961 (5th Cir. 1947).

In detailing the circumstances justifying court approval of a FLSA settlement in a litigation context, the Eleventh Circuit has held:

> Settlements are permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores,* 679 F.2d at 1354; *see also Brooks v. Continental Property Services, Inc.,* 2008 WL 781825 (M.D. Fla. 2008) (approving FLSA settlement in accordance with *Lynn's Food Stores); Swailes v. Surety Construction Co.,* 2008 WL 875981 (M.D. Fla. March 27, 2008). In determining whether a settlement is fair and reasonable, the District Court should consider the following factors:

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceeding and the amount of discovery completed;

(4) the probability of the plaintiff's success on the merits;

(5) the range of possible recovery; and

(6) the opinion of counsel.

*Leverso v. S. Trust Bank of Ala. Nat. Assoc.,* 18 F.3d 1527, 1631, n. 6 (11th Cir. 1995). In reviewing the above factors, there is a "strong presumption" in favor of approval. *Dail v. George A. Arab, Inc.,* 391 F.Supp.2d 1142, 1146 (M.D. Fla. 2005); *see also Cotton v. Hinton*,

559 F.2d 1326, 1331 (5th Cir. 1977).[2]  In addition, the court should be mindful that "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re: Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 806 (3rd Cir. 1995) (*citing Cotton,* 559 F.2d at 1330).

The Parties respectfully request that the Court approve the agreed-upon terms of the settlement and submit that the agreed-upon terms of settlement are fair and reasonable in light of the relevant facts.  *See Dail,* 391 F.Supp.2d at 1145-46.

(1)     <u>The existence of fraud or collusion behind the settlement</u>.  The Parties' agreement to resolve this matter is not the result of any fraud or collusion by, between, or among any of the Parties or Counsel for the Parties.  This case has been litigated for over a year, including the exchange of thousands of pages of discovery, and involves novel legal issues regarding compensable time in today's smart phone and electronics driven society and workplaces.  Further, the Parties engaged in numerous settlement discussions, including attending multiple formal mediations and informal settlement conferences.

Counsel for Thinkdirect has evaluated the law applicable to the facts of this matter, and Thinkdirect has drawn inferences in favor of Scali in calculating the amount of potential overtime wages due to Scali.

Scali represents that he has relied upon the CISCO records provided by Thinkdirect in evaluating the amount of potential overtime wages.  Thinkdirect analyzed the CISCO records and made calculations regarding potential overtime owed under the FLSA, and provided same to Scali.  Scali, and his counsel, have had an opportunity to review Thindirect's calculations and find them to be satisfactory based on the good faith representations by Thinkdirect.

---

[2] *In Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

Further, the minimal proposed payment amount to Scali's counsel, after extensive litigation and on the proverbial day before trial, undermines any perception of collusion.

(2)     The complexity, expense, and likely duration of the litigation.  As noted above, the claims in this litigation involve novel legal issues regarding compensable time under the FLSA and both parties have incurred great time and expense litigating the claims.  For instance, Thinkdirect produced hundreds of pages of CISCO records for Scali, as well as other employment documents.  Further, Thinkdirect moved for summary judgment on all claims and Scali successfully defeated summary judgment in part.

In order to prove his FLSA claim, Scali would need to expend additional resources and the resources of this Court through litigation.  Accordingly, the Parties have concluded that the costs associated with further litigating Scali's claims would exceed the value of the claims agreed upon by the Parties pursuant to the Settlement Agreement.

(3)     The stage of the proceeding and the amount of discovery completed.  The present settlement was reached after extensive litigation, completion of discovery, and on the eve of trial.  Accordingly, Scali, and his counsel, have sufficient information to properly value his claim and determine that the terms of the settlement are fair and reasonable.

(4)     The probability of the Plaintiff's success on the merits.  Scali's claim relates to FLSA violations of not being paid overtime for hours worked in excess of forty during workweeks employed at Thinkdirect.  Given the Court's denial of Thinkdirect's Motion for Summary Judgment in the *Heidbrink/Marion* action, the Parties have mutually-agreed that it would be beneficial to resolve issues stemming from Scali's employment and separation therefrom amicably.  Thinkdirect maintains that it was not liable under the FLSA for overtime, Scali's claim involves a novel issue pertaining to the compensable time under the FLSA, and accordingly, Scali is not assured success on this issue were he to continue to litigate it.

(5) <u>The range of possible recovery.</u>  As set out above, the proposed settlement provides a good faith belief that the amounts represent full compensation to Scali for potential overtime wages allegedly due to him, based on inferences dealing with perceived anomalies in the CISCO records. There is a potential that, if the claims were to continue through litigation, Scali might recover less.

(6) <u>The opinion of counsel</u>.  The undersigned counsel for Thinkdirect and Scali agree that prolonged litigation over the amount in dispute would have been highly inefficient for the Parties and the Court. Scali is aware of the challenges he would face in litigation, the uncertainties in his recovery amount and of the inherent delays, and expense involved in protracted litigation. Thus, he agrees that Court approval of the Settlement Agreement is in his best interest.

## **CONCLUSION**

For the reasons set out above, the Parties respectfully request that the Court issue an Order approving the proposed settlement and dismissing the case, including the claims of the Opt-ins, with prejudice.  Scali has authorized Counsel to present this Motion to the Court as a Joint Motion.

Respectfully submitted this 24th day of June, 2016.

| | |
|---|---|
| */s/ Christopher D. Gray, Esquire* | */s/ Kevin E. Hyde, Esquire* |
| Christopher D. Gray, Esquire | Kevin E. Hyde, Esquire |
| Florida Bar No.: 902004 | Florida Bar No.: 0768235 |
| cdg@florinroebig.com | khyde@foley.com |
| glw@FlorinRoebig.com | Dabney D. Ware, Esquire |
| Wolfgang M. Florin, Esquire | Florida Bar No.: 095990 |
| Florida Bar No.: 907804 | dware@foley.com |
| WMF@FlorinRoebig.com | Leonard V. Feigel, Esquire |
| Robin M. Orosz, Esquire | Florida Bar No.: 0027752 |
| Florida Bar No.: 724769 | lfeigel@foley.com |
| ROrosz@FlorinRoebig.com | FOLEY & LARDNER LLP |
| FLORIN ROEBIG, P.A. | One Independent Drive, Suite 1300 |
| 777 Alderman Road | Jacksonville, FL  32202-5017 |
| Palm Harbor, FL 34683 | Telephone (904) 359-2000 |
| Telephone (727) 786-5000 | Attorneys for Defendants |
| Attorneys for Plaintiffs | |

# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** ("Agreement") is made and entered into by and between Plaintiff Michael Scali (herein "Plaintiff") and Pat Dall ("Dall"), Thomas H. Ripley ("Ripley"), Dennis Cahill ("Cahill"), Dave Macey, ("Macey") and ThinkDirect Marketing Group, Inc., on behalf of itself and any companies that are parents, subsidiaries, affiliates or other entities related to or associated with ThinkDirect Marketing Group, Inc. and any of its past or present predecessors, successors, assigns, administrators, partners, officers, directors, employees, and agents ("ThinkDirect") (collectively Dall, Ripley, Cahill, Macey and ThinkDirect are referred to as "Defendants") (collectively Plaintiff, Dall, Ripley, Cahill, Macey and ThinkDirect are referred to as the "Parties").

## Recitals

**WHEREAS,** Plaintiff was employed as a telemarketing agent by ThinkDirect. Relevant to Plaintiff's employment, ThinkDirect used a CISCO telephone/computer network system. The CISCO system precisely tracked the agent's activity from the time the Plaintiff logged into the system through logoff. Throughout a normal workday, Plaintiff placed himself into various and different time categories depending on what he was doing at any given time. Some categories are paid, such as ready to receive calls, training and breaks, and some categories are not paid, such as lunch and personal time; and

**WHEREAS**, Plaintiff filed a lawsuit against the Defendants in Florida state court in the Sixth Judicial Circuit, in and for the Pinellas County, which was subsequently removed to the United States District Court for the Middle District of Florida, Tampa Division, Case Number 8:14-cv-01919-JSM-TBM (the "Action"). Plaintiff alleged that the Defendants violated the Fair Labor Standards Act (FLSA) by failing to pay him overtime wages ("OT"). Plaintiff claimed that he should have receive overtime pay for any period of time spent in the personal status category, for time logging in and out of the system, and for lunch periods less than 30 minutes; and

**WHEREAS**, Defendants deny any liability pertaining to the Action and state that during the time spent in various statuses for which Plaintiff seeks compensation, Plaintiff did not perform duties for the benefit of ThinkDirect (*i.e.* work). Thus, ThinkDirect was not required to compensate him for that time. Furthermore, Defendants also contend that the time, in whole or in part, was not required to be paid because it falls under the *de minimus*, preliminary or postliminary activity exceptions; and

**WHEREAS,** Plaintiff filed another lawsuit against the Defendants in Florida state court in the Sixth Judicial Circuit, in and for the Pinellas County, Case Number 15-001050-CI (the "Retaliation Action"). Plaintiff alleged he was subject to retaliation in violation of the FLSA regarding his claims in or related to the Action. Defendants deny any liability regarding the Retaliation Action and state that all employment decisions pertaining to Plaintiff were made for legitimate business reasons; and

**WHEREAS**, the Parties have engaged in significant discovery as to Plaintiff's duties performed during the disputed time categories, time worked and time paid, including

**Error! Unknown document property name.**

exchange and review of all of the Plaintiff's CISCO data reports, and payroll records and witness depositions; and

**WHEREAS**, the Parties, by and through counsel, engaged in voluntary arms-length settlement discussions. The Parties reached an agreement resolving all the claims in the Action and Retaliation Action, the terms of which are specified and incorporated into this Agreement; and

**WHEREAS**, Plaintiff agreed to sign this Agreement, to accept certain consideration in order to resolve the Action and Retaliation Action, and to be bound by its terms; and

**WHEREAS**, this Agreement specifies that Plaintiff waives any claim(s) he may have against Defendants relating in any way to claims encompassed in the Action, Retaliation Action, any claims of unpaid wages that could have been asserted either individually, collectively or by any means whatsoever, and any claims related to his employment with Defendants as further defined below. The consideration for this Agreement is the compensation paid to Plaintiff to which Defendants claim he is not otherwise entitled.

**NOW, THEREFORE**, in consideration of the promises and mutual promises contained herein, it is agreed as follows:

A. The Recitals above are true and accurate and incorporated into this Agreement.

B. This Agreement becomes effective upon (1) Plaintiff signing it; (2) the Agreement being approved by the Court in which the Action is pending; (3) the Action being dismissed *with prejudice;* and (4) the Retaliation Action being dismissed *with prejudice*. No payment is due to Plaintiff unless all these conditions are satisfied.

C. This Agreement is not and shall not in any way be construed as an admission by Defendants of any wrongdoing or any violation of the Fair Labor Standards Act, Florida Statute Section 448.08, or any other law. The Parties have entered into this agreement for the sole purpose of resolving litigation and to avoid the future burden, expense, delay and uncertainties of litigation.

D. <u>Consideration to Plaintiff (or on his behalf):</u> In consideration of this Agreement, and in full and final settlement of any claims which Plaintiff has made in the Action and Retaliation Action, and for execution of this Agreement, ThinkDirect, on behalf of itself and Dall, Ripley, Cahill and Macey, agrees as follows as full and final settlement of this matter:

As part of a global settlement which includes other claimants, ThinkDirect agrees to pay to or on behalf of Plaintiff the total settlement amount of $1,995.96 ("Total Settlement Amount"). The Total Settlement Amount will be paid in three (3) checks as follows:

1. One check in the gross amount of Eight Hundred Forty-Two Dollars and 73/100 cents ($842.73), will be paid by ThinkDirect to Michael Scali as wages, subject to required withholdings, and reported on an IRS Form W2. The Parties agree and acknowledge that this amount is a fair compromise in relation to Michael Scali's unpaid overtime claims and is based on data from the Cisco system identifying the amount of time Plaintiff spent in the various categories disputed in the litigation. Plaintiff is responsible for all taxes on this payment, if any, which are not deducted as withholdings or which were not the responsibility of ThinkDirect.

2. One check in the gross amount of Seventy-Five Dollars and no/100 ($75.00), will be paid by ThinkDirect to Michael Scali as consideration for Plaintiff's execution of the general release, including releasing his retaliation claim in the Retaliation Action, and reported on an IRS Form 1099.

3. One check to Florin Roebig, P.A., as reimbursement for attorneys' fees and costs, the gross amount of One Thousand and Seventy Eight Dollars and 23/100 cents ($1,078.23) will be allocated towards attorneys' fees and costs for Plaintiff's claim, and will be reported on an IRS Form 1099.

For payments made on a Form 1099, the payee agrees to be solely responsible for federal, state, and local taxes due on said payment, and expressly agrees to indemnify and hold ThinkDirect harmless for any claims involving federal, state, or local taxes resulting from such responsibility.

All payments will be made and mailed to Plaintiff's counsel, Christopher D. Gray of the law firm of Florin Roebig, PA, within fifteen (15) business days after four conditions are met: (1) Plaintiff executes this Agreement and returns an executed copy to Defendants' counsel Kevin E. Hyde of the law firm of Foley & Lardner LLP; (2) the Court in the Action issues an order approving the terms of this Agreement; and (3) the Action is dismissed *with prejudice;* and (4) the Retaliation Action is dismissed *with prejudice*. The Parties understand that payment will not be made until all four conditions are met and that the obligation to pay Plaintiff becomes enforceable only upon each of the three conditions occurring.

E. <u>Consideration to ThinkDirect</u>:  Plaintiff agrees to the following terms:

1. Plaintiff will file all the necessary documents to obtain an order from the Court in the Action approving this Agreement and dismissing the Action *with prejudice*.

2. Plaintiff will file all the necessary documents to obtain an order dismissing the Retaliation Action *with prejudice.*

3. Plaintiff promises not to file or join any other lawsuits asserting claims for unpaid wages, including unpaid OT against Dall, Ripley, Cahill, Macey, or ThinkDirect and any companies that are parents, subsidiaries, affiliates or other entities related to or associated with ThinkDirect, including but not limited to Agora Marketing Solutions, Inc., Special Data Processing Corporations, National Magazine Exchange, and Blackstreet Capital Management, LLC, past or present predecessors, successors, assigns,

3

past and present administrators, partners, officers, directors, employees, agents and attorneys. This promise relates to all periods of time while Plaintiff was employed by ThinkDirect up to the time he executes this Agreement.

4. <u>Limited Release of Unpaid Wages Claims by Plaintiff</u>: Plaintiff does hereby release and forever discharge ThinkDirect and any companies that are parents, subsidiaries, affiliates or other entities related to or associated with ThinkDirect, including but not limited to Agora Marketing Solutions, Inc., Special Data Processing Corporations, National Magazine Exchange, and Blackstreet Capital Management, LLC, its past or present predecessors, successors, assigns, past and present administrators, partners, officers, directors, employee, agents and attorneys, including but not limited to Patrick Dall, Thomas H. Ripley, Dennis Cahill and David Macey from any and all claims that were or could have been asserted by Plaintiff against ThinkDirect for unpaid wages whether under federal statute or common law, including unpaid overtime under the FLSA, or Florida statute or common law, including unpaid wages under Florida Statute Section 448.08, or other state statute or common law from the beginning of time up to and including the date of this Agreement.

5. <u>General Release by Plaintiff</u>: Plaintiff does hereby release and forever discharge ThinkDirect and any companies that are parents, subsidiaries, affiliates or other entities related to or associated with ThinkDirect, including but not limited to Agora Marketing Solutions, Inc., Special Data Processing Corporations, National Magazine Exchange, and Blackstreet Capital Management, LLC, its past or present predecessors, successors, assigns, past and present administrators, partners, officers, directors, employee, agents and attorneys, including but not limited to Patrick Dall, Thomas H. Ripley, Dennis Cahill and David Macey from any and all claims that were or could have been asserted by Plaintiff against ThinkDirect including, but not limited to any claim under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"); Fair Labor Standards Act, 29 U.S.C. § 8 et seq. ("FLSA"), including retaliation claims; Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"); Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.; the Florida Civil Rights Act of 1991 ("FCRA"), Fla. Stat. § 760.01; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 et. seq. ("Section 1981"), other claims of statutory violation, retaliation; constructive or wrongful discharge; all tort claims, claims made to the U.S. Department of Labor or any other local, state or federal administrative agency, intentional or otherwise; negligence claims; constitutional claims, including, but not limited to procedural and/or substantive due process and First Amendment claims; claims for personal or other property, claims pursuant to any contractual relationship between the parties, claims for attorney's fees and costs, and any other claims or causes of action Plaintiff has or may have had arising out of his work for ThinkDirect, and separation from Direct following execution by Plaintiff of this Settlement Agreement, from the beginning of time up to and including the date of this Agreement.

F. <u>Parties' Attorneys' Fees and Costs</u>. Except as otherwise agreed in Section D of this Agreement, the Parties shall bear their own attorney's fees and costs.

4

  G. <u>No Assignment of Claims Released</u>.  Plaintiff represents that he has not assigned, given or sold any portion of any claim discussed in this Agreement to anyone else.

  H. <u>Consultation with Counsel</u>.  Plaintiff acknowledges that he consulted with his counsel, Christopher D. Gray, Wolfgang M. Florin and/or Robin M. Orosz of the law firm of Florin Roebig, PA prior to signing this Agreement.

  I. <u>Non-Disparagement by Plaintiff and Enforcement Thereof</u>.  Plaintiff agrees that he will not criticize, denigrate or otherwise speak adversely about ThinkDirect, Dall, Ripley, Cahill or Macey.  The type of comments contemplated include, but are not limited to any remark which may cause or tend to cause an adverse impact on the reputation or character of ThinkDirect, Dall, Ripley, Cahill or Macey or cause a reasonable person in the community to negatively alter or change their opinion of ThinkDirect, Dall, Ripley, Cahill or Macey.  If asked about the Action, the Retaliation Action or the terms of this Agreement, Plaintiff shall respond that the matter is confidential and that the matter between the Parties has been resolved by mutual agreement.  This obligation also extends to any publication or electronic communication including all forms of social media, including e-mail, Facebook, Twitter, *etc.*

  The Plaintiff's duty under this paragraph are material terms of this Agreement.  In the event of a breach, Defendants retains the right to seek all available legal remedies, including but not limited to attorneys' fees and costs.

  J. <u>No Reinstatement</u>:  Plaintiff does not and will not seek reinstatement of his employment with ThinkDirect, future employment, or return to performing services for ThinkDirect or at a ThinkDirect facility or affiliate.  Plaintiff acknowledges that he has no right to such reinstatement or employment.  If the Plaintiff knowingly or unknowingly accepts employment with ThinkDirect in violation of this section, or if ThinkDirect, unknowingly extends employment to Plaintiff, they agree, both individually and collectively, that the Plaintiff will immediately resign such employment or the employment will be terminated as soon as he or ThinkDirect are aware of the employment which violates this Agreement.  The Plaintiff agrees that ThinkDirect may terminate Plaintiff's employment if he violates this section and that violation of this section is good and sufficient cause for the termination of her employment.

  K. <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement between the Parties, and fully supersedes any and all prior agreements or understandings between the Parties pertaining to the issues raised in the Action and the Retaliation Action.  This Agreement may not be changed orally, and may only be modified in writing.  This Agreement shall be interpreted and construed under the laws of the State of Florida, the place where ThinkDirect is located and conducts operations.  This Agreement shall be interpreted in accordance with the plain meaning of its terms and not for or against the drafter.

  L. <u>Amendments</u>.  This Agreement may not be amended or modified in any respect whatsoever, except by a writing duly executed by the Parties, and the Parties each

**Error! Unknown document property name.**

agree that they shall make no claims at any time that this Agreement has been orally amended or modified.

  M. <u>Binding Effect</u>.  This Agreement shall be binding upon the Plaintiff and Defendants and upon their heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of said parties and to their heirs, administrators, representatives, executors, successors and assigns.

  N. <u>Attorneys' Fees And Costs For Enforcement Of Agreement</u>. The Parties agree that any party shall be entitled to recover reasonable attorneys' fees and expenses to the extent permitted by law without invalidating this Agreement and any action arising from or relating to enforcement of any provision of this agreement in which that party prevails on any or all issues presented, including attorneys' fees and costs incident to appeal.

  O. <u>Knowing and Voluntary Agreement</u>.  In signing this Agreement, the Parties expressly warrant that they have read and fully understand it.  All parties acknowledge that this Agreement is voluntary and that no one is making or forcing either party to enter into it.  All parties acknowledge that they have had an opportunity to consult with an attorney before signing it.

  P. <u>Counterparts</u>.  This Agreement may be executed simultaneously in counterparts each of which shall be deemed an original, but which collectively shall constitute one and the same instrument.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

## Defendants' Signature Page

_____
Authorized Representative for ThinkDirect

Date:_____

_____
Patrick Dall

Date:_____

_____
Thomas H. Ripley

Date:_____

_____
Dennis Cahill

Date:_____

_____
Dave Macey

Date:_____

7

**Error! Unknown document property name.**

## Plaintiff's Signature Page

_____
Michael Scali

Date:_____

**Error! Unknown document property name.**